UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>(1) LORENZO NOURAFCHAN,<br><br>(2) NOWEL MILIK,<br><br>(3) NICHOLAS RUDELA,<br><br>(4) DAVID MAKARY, and<br><br>(5) STJEPAN VINSKI,<br><br>Defendants | Criminal No. 26cr10115<br><br>Violations:<br><br>Count One: Securities Fraud Conspiracy<br>(18 U.S.C. § 1349)<br><br>Count Two: Securities Fraud Conspiracy<br>(18 U.S.C. § 371)<br><br>Count Three: Securities Fraud; Aiding and Abetting<br>(18 U.S.C. §§ 1348 and 2)<br><br>Count Four: Securities Fraud; Aiding and Abetting<br>(15 U.S.C. §§ 78j(b) and 78ff(a); 17 C.F.R.<br>§ 240.10b-5; 18 U.S.C. § 2)<br><br>Count Five: Money Laundering Conspiracy<br>(18 U.S.C. § 1956(h))<br><br>Counts Six through Eight: False Statements<br>(18 U.S.C. § 1001(a)(2))<br><br>Count Nine: Obstruction of Justice<br>(18 U.S.C. § 1512(b)(1))<br><br>Count Ten: Obstruction of Justice<br>(18 U.S.C. § 1512(b)(3))<br><br>Count Eleven: False Declaration Before<br>Grand Jury<br>(18 U.S.C. § 1623(a))<br><br>Forfeiture Allegation:<br>(18 U.S.C. § 981(a)(1)(C) and<br>28 U.S.C. § 2461(c))<br><br>Money Laundering Forfeiture Allegation:<br>(18 U.S.C. § 982(a)(1)) |

INDICTMENT

At all times relevant to this Indictment:

## General Allegations

1.      Victim Law Firm A ("Law Firm A"), headquartered in Massachusetts, was one of the largest corporate law firms in the world by revenue.

2.      Defendant LORENZO NOURAFCHAN ("L. NOURAFCHAN") lived in California.

3.      Defendant NOWEL MILIK lived in California and owned an insurance agency.

4.      Defendant NICHOLAS RUDELA, also known as "Niko," lived in California and worked at MILIK's insurance agency.

5.      Defendant DAVID MAKARY lived in California and worked at MILIK's insurance agency.

6.      Defendant STJEPAN VINSKI, also known as "Stipe," lived in California and was RUDELA's cousin.

7.      CC-1 lived in California.  From in or about 2021 to in or about 2023, CC-1 worked as an attorney for Law Firm A.  As an attorney employed by Law Firm A, CC-1 owed duties of loyalty, trust, and confidence to Law Firm A and its clients.  CC-1 was L. NOURAFCHAN's brother.

8.      CC-2 lived in California, where he owned and operated a salon.

9.      CC-3 lived in California and worked at MILIK's insurance agency.

10.     CC-4 lived in California and was a friend of CC-3 and MILIK's.

11.     CC-5 lived in California and was a friend of MILIK's.

12.     CC-6 lived in California and was a friend of MILIK's.

13.     CC-7 lived in California and was a former employee of MILIK's.

14.    CC-8 lived in California and worked at MILIK's insurance agency.

15.    CC-9 lived in California and was an immediate relative of MILIK's.

16.    CC-10 lived in California and was an immediate relative of MILIK's.

17.    CC-11 lived in California and was a friend of VINSKI's.

18.    CC-12 lived in California and was a friend of VINSKI's.

19.    iRobot Corporation ("iRobot") was a technology company.  At relevant times, iRobot traded on the NASDAQ Stock Market ("NASDAQ") under the ticker symbol IRBT.  On or about August 5, 2022, iRobot and Amazon.com, Inc. ("Amazon") announced a definitive agreement under which Amazon agreed to acquire iRobot.  Law Firm A represented iRobot in connection with its acquisition by Amazon.  At the time of the announcement of iRobot's acquisition, CC-1 worked for Law Firm A and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

20.    KnowBe4, Inc. ("KNBE") was an information technology security company.  At relevant times, KNBE traded on the NASDAQ under the ticker symbol KNBE.  On or about October 12, 2022, KNBE and Vista announced a definitive agreement under which Vista agreed to acquire KNBE.  Law Firm A represented an investment bank advising a special committee of KNBE's board of directors in connection with KNBE's acquisition by Vista.  At the time of the announcement of KNBE's acquisition, CC-1 worked for Law Firm A and owed duties of loyalty, trust, and confidence to Law Firm A and its clients.

<u>Overview of the Securities Fraud Conspiracies and the Scheme to Defraud</u>

21.    Beginning no later than in or about July 2022 and continuing through at least in or about November 2023, L. NOURAFCHAN, MILIK, RUDELA, MAKARY, VINSKI, CC-1, CC-2, CC-3, CC-4, CC-5, CC-6, CC-7, CC-8, CC-9, CC-10, CC-11, and CC-12 conspired with each

other, and with others known and unknown to the Grand Jury, to engage in an insider trading scheme to misappropriate, obtain, and trade while in possession of material non-public information ("MNPI") about the merger-and-acquisition activity of various publicly traded companies.

22.     As part of the scheme, CC-1 obtained and misappropriated MNPI from Law Firm A and its clients by, among other means, viewing deal-related documents stored on Law Firm A's document management system, including documents relating to confidential transactions on which CC-1 did not work, and provided the MNPI to L. NOURAFCHAN.  As further part of the scheme, L. NOURAFCHAN provided the MNPI to co-conspirators, including CC-2, whom L. NOURAFCHAN recruited to join the insider trading scheme.  CC-2, in turn, recruited and attempted to recruit others, including MILIK, to execute securities trades while in possession of that MNPI in exchange for the traders' agreement to kickback illicit trading proceeds and other benefits up the tipping chain to CC-2 and the sources of the MNPI, including L. NOURAFCHAN and CC-1.  CC-2 also traded while in possession of the MNPI.

23.     As further part of the scheme, recruited traders, including MILIK, provided that MNPI to other traders—including RUDELA, MAKARY, CC-3, CC-4, CC-5, CC-6 , CC-7, CC-8, CC-9, and CC-10, and others known and unknown to the Grand Jury—with the intent that they trade while in possession of that MNPI, in exchange for benefits, including kickbacks of illicit trading proceeds up the tipping chain to CC-2 and the sources of the MNPI, including L. NOURAFCHAN and CC-1.

24.     As further part of the scheme, traders, including RUDELA, then passed the MNPI to other traders—including VINSKI—who executed securities trades while in possession of that MNPI, agreed to kickback illicit trading proceeds up the tipping chain to CC-2 and the sources of the MNPI, including L. NOURAFCHAN and CC-1, and provided that MNPI to others known and

4

unknown to the Grand Jury, including CC-11 and CC-12, who traded while in possession of that MNPI.

<u>Object and Purposes of the Securities Fraud Conspiracies</u>

25.     The object of the conspiracies was to commit securities fraud by trading in the securities of various companies while in possession of MNPI about those companies.    The principal purposes of the conspiracies were to make money and to conceal the conspirators' actions from others, including regulators and law enforcement.

<u>Manner and Means of the Securities Fraud Conspiracies</u>

26.     Among the manner and means by which L. NOURAFCHAN, MILIK, RUDELA, MAKARY, VINSKI, CC-1, CC-2, CC-3, CC-4, CC-5, CC-6, CC-7, CC-8, CC-9, CC-10, CC-11, CC-12, and others known and unknown to the Grand Jury carried out the conspiracies and the scheme to defraud were the following:

> a.     Obtaining MNPI about forthcoming mergers and acquisitions ("M&A") transactions and other confidential corporate matters from Law Firm A, including by viewing confidential documents on Law Firm A's document management systems, including documents that CC-1 accessed that were stored on a Law Firm A server located in the District of Massachusetts;

> b.     Misappropriating and sharing that MNPI, in violation of the duties of loyalty, trust, and confidence that CC-1 owed to Law Firm A and its clients, as well as in violation of insider trading and confidentiality policies that CC-1 was bound by;

> c.     Recruiting co-conspirators, including L. NOURAFCHAN and CC-2, who shared MNPI about the M&A activity of publicly traded companies, in

violation of the duties of trust and confidence owed to the sources of the information, including CC-1 and his employer, Law Firm A;

d.    Recruiting co-conspirators who agreed to trade in the securities of public companies while in possession of MNPI in exchange for an agreement to share in and kick back a portion of the profits generated by their insider trading and other benefits;

e.    Trading in the securities of those companies while in possession of MNPI and knowing that the MNPI was obtained in breach of a duty that the sources of the information owed, including trades executed over a securities exchange located in Boston, Massachusetts, and including by trading in brokerage accounts in their own names, in the names of family members and associates, and the names of corporate entities they controlled;

f.    Transferring proceeds of the illicit trading to co-conspirators, directly and indirectly, in cash and other transactions designed to conceal and disguise the nature, location, source, ownership, and control of the insider trading proceeds; and

g.    Taking steps to conceal the insider trading scheme from regulators and law enforcement, including by: communicating about the MNPI in person and via encrypted messaging applications; instructing co-conspirators during in-person meetings to put away electronic devices; enlisting other individuals to trade on behalf of co-conspirators to reduce direct connections between tippers and traders; using coded language and foreign languages, including coffee-related code words to refer to trading and MNPI; transferring

proceeds in cash; deleting phone communications; creating false explanations and sham research to substantiate trading decisions; and lying to and misleading law enforcement, securities regulators, and brokerage firms.

Overt Acts in Furtherance of the Securities Fraud Conspiracies and the Scheme to Defraud

27.     Beginning no later than in or about July 2022 and continuing through at least in or about November 2023, L. NOURAFCHAN, MILIK, RUDELA, MAKARY, VINSKI, CC-1, CC-2, CC-3, CC-4, CC-5, CC-6, CC-7, CC-8, CC-9, CC-10, CC-11, and CC-12, together with others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, including all of the overt acts alleged in paragraphs 89 through 91 below, in furtherance of the securities fraud conspiracies and the scheme to defraud.

*iRobot*

28.     In or about June and July 2022, CC-1 viewed confidential materials on Law Firm A's document management system regarding a potential acquisition of iRobot, which was a deal that CC-1 did not work on.

29.     In or about June and July 2022, after CC-1 misappropriated MNPI from Law Firm A about a potential acquisition of iRobot, CC-1 provided the MNPI to L. NOURAFCHAN.

30.     In or about July 2022, L. NOURAFCHAN recruited CC-2 to join the insider trading scheme.

31.     On or about July 18, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, MILIK purchased iRobot securities while in possession of MNPI.

32.     On or about July 18, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-5 purchased iRobot securities while in possession of MNPI.

33.     On or about July 18, 2022, RUDELA opened a brokerage account.

34.     On or about July 19, 2022, CC-2 sent L. NOURAFCHAN a text message to arrange a meeting the following day.  L. NOURAFCHAN responded, "Great.  Check other app."

35.     On or about July 19, 2022, L. NOURAFCHAN sent CC-2 a message on an encrypted messaging application, "Just don't discuss anything till we speak again."  CC-2 responded, "Ok.  I will be there tomorrow morning.  Or if you're in the neighborhood that the salon come by." L. NOURAFCHAN responded with a thumbs up emoji.

36.     On or about July 19, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, RUDELA purchased iRobot securities while in possession of MNPI.

37.     On or about July 19, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-8 purchased iRobot securities while in possession of MNPI.

38.     On or about July 21, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-2 purchased iRobot securities while in possession of MNPI.

39.     On or about July 26, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, VINSKI purchased iRobot securities while in possession of MNPI.

40.    On or about July 26, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-11 purchased iRobot securities while in possession of MNPI.

41.    On or about July 29, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-12 purchased iRobot securities while in possession of MNPI.

42.    On or about August 3, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-4 purchased iRobot securities while in possession of MNPI.

43.    On or about August 3, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of iRobot from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-9 purchased iRobot securities while in possession of MNPI.

44.    On or about August 5, 2022, after the announcement of the iRobot acquisition, MILIK texted a news article announcing the acquisition to RUDELA, MAKARY, and CC-8.

45.    On or about August 5, 2022, after the announcement of the iRobot acquisition, MILIK texted a news article announcing the acquisition to CC-5.

46.    On or about August 5, 2022, after the announcement of the iRobot acquisition, MILIK texted CC-2, "You were right."

47.    On or about August 5, 2022, MILIK texted RUDELA, MAKARY, and CC-8, "Are you fools awake" and transmitted an image of iRobot's surging share price.  CC-8 responded, "Omg," along with a happy face emoji and rocket ship emoji.  MAKARY responded, "Oh my God!!!!!  Yo are you kidding me!! This is big!"

48.   In or about August and September 2022, MILIK sent multiple text messages to CC-2 seeking stock information, asking to "keep us posted" and whether there was "anything," "any updates," "any new info," and "any update before the market closes."

49.   On or about August 8, 2022, MAKARY opened a brokerage account.

50.   On or about August 31, 2022, MAKARY opened a second brokerage account.

51.   On or about September 2, 2022, CC-2 sent an encrypted message to L. NOURAFCHAN, "Good morning coffee." L. NOURAFCHAN replied, ". . . I'm outside your house."

52.   On or about September 2, 2022, CC-2 texted MIILK, "Call me."

53.   On or about September 12, 2022, CC-9 texted MILIK, "Was there another stocks thing you were gonna show me? Like irbt." MILIK asked, "why." CC-9 said, "Because I want money. You told me before that there was another one coming. It's ok if it's not happening anymore." MILIK said, "Maybe one later this month." CC-9 said, "Okay."

*KnowBe4, Inc.*

54.   On or about September 29, 2022, CC-1 viewed confidential materials on Law Firm A's document management system regarding a potential acquisition of KNBE, which was a deal that CC-1 worked on.

55.   On or about October 4, 2022, MILIK texted CC-2, "Any kind of update I can give my guy as to when we should expect the next visit."

56.   On or about October 4, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-2 sent an encrypted message to L. NOURAFCHAN, "Hi How's it going." L. NOURAFCHAN responded to CC-2, "Hey brother. Coming home today?" CC-2 replied, "Yes."

57.     On or about October 5, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, MILIK texted CC-2, "how did your meeting go, can we talk?" CC-2 responded, "I just finish [sic] work and text him he hasn't text me back."

58.     On or about October 5, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-2 texted an image to MILIK showing a brokerage account dashboard featuring the stock, "KNBE."

59.     On or about October 5, 2022, MILIK texted RUDELA and MAKARY, "You guys awake??? Meet me at the office at 6:15 a.m."

60.     On or about October 6, 2022, RUDELA replied to MILIK's text, "Okay." MILIK texted RUDELA and MAKARY, "Met my barber" and "Call dave see if he is coming." MAKARY texted, "On my way."

61.     On or about October 6, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-2, MILIK, RUDELA, MAKARY, and CC-10 purchased KNBE securities while in possession of MNPI.

62.     On or about October 7, 2022, MILIK texted CC-2, "Did you buy." CC-2 responded, "Yes." MILIK said, "Market is terrible today."

63.     On or about October 7, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-6 purchased KNBE securities while in possession of MNPI.

64.     On or about October 7, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-9 purchased KNBE securities while in possession of MNPI.

65.     On or about October 9, 2022, after CC-1 misappropriated MNPI regarding a potential acquisition of KNBE from Law Firm A and provided the MNPI to L. NOURAFCHAN, CC-4 purchased KNBE securities while in possession of MNPI.

66.     On or about October 10, 2022, CC-2 sent an encrypted message to L. NOURAFCHAN, "Coffee tomorrow."

67.     On or about October 10, 2022, CC-3 purchased KNBE securities while in possession of MNPI. Also on that date, MILIK and CC-3 exchanged the following text messages:

MILIK:      Did you get in? Announcement might be tonight.

CC-3:       I was about to but it shot up to $1. I got flustered.

MILIK:      Get in now. Up to you. Might not be coming back.

CC-3:       [transmitted screenshot of KNBE securities purchase order]

CC-3:       I can only add $1k at a time. Robinhood lol.

MILIK:      Up to you.

CC-3:       It's better to go in at $1.05 I think. $1 won't fill.

MILIK:      Just get in before the close.

CC-3:       [transmitted screenshot of KNBE call option price]

MILIK:      I just bought more at 1.10.

CC-3:       [transmitted screenshot of CC-3's KNBE position]

CC-3:      Thanks man. :)

MILIK:     Should be double before the end of the week.  I'll tell you when to get out.

CC-3:      I need to switch to some other platform that doesn't limit deposits.

MILIK:     No need let's get you [sic] account up to $100k no need to deposit more.

CC-3:      KNBE . . . already?  Lol

MILIK:     Huh

CC-3:      My call is already up to $1.28 lol.  You're a wizard.

MILIK:     $2.50 wait.

CC-3:      ["liked" "$2.50 wait"]

68.    On or about October 10, 2022, MILIK texted CC-2, "Wanna check with him when the news is supposed to come out, doesn't seem like today is happening."

69.    On or about October 11, 2022, CC-2 sent encrypted messages to L. NOURAFCHAN including, "Call me when you're free," "I'm at work if you wanna get coffee," and "Call me."

70.    On or about October 11, 2022, MILIK and CC-10 exchanged the following text messages:

CC-10:     . . . I've lost more than half my money.

MILIK:     Be patient.

CC-10:     It's hard when it's going down like this.  I'm in too deep.

MILIK:     Relax.

CC10:      When did you say the news was gonna be announced by.

MILIK:     Friday.

71.     On or about October 12, 2022, after the announcement of the acquisition of KNBE, CC-2 sent an encrypted message to L. NOURAFCHAN, "Good morning.  Coffee was Very good this morning."

72.     On or about October 12, 2022, after the announcement of the acquisition of KNBE, MILIK texted CC-2, "He was right!!!!  It blew up this morning!"

73.     On or about October 12, 2022, after the announcement of the acquisition of KNBE, CC-3 texted MILIK, "Thanks for everything" along with a heart emoji.  MILIK replied with an emoji of an individual making a heart with their hands.  CC-3 texted, "Funny name 'KnowBe4' What a troll looool."  MILIK responded, "It is what it is."

74.     On or about October 28, 2022, MILIK sent an encrypted message to CC-2, "He was asking if you have any timeline as to when the next trip might happen."  CC-2 responded, ". . . He will call me."

75.     On or about November 8, 2022, MILIK sent an encrypted message to CC-2, "Any news, my guy is getting anxious again.  Can we at least check when I can tell him the next one will be?"  CC-2 replied, "Ok."

76.     On or about November 21, 2022, MILIK sent an encrypted message to CC-2, "My guy is traveling second week of December and wanted to know if anything is in the works before his trip, any news?"  CC-2 replied, "They haven't called yet."  MILIK said, "Ok, if you can see that would be great, he just wants to make sure nothing is happening while he is gone."

77.     On or about December 5, 2022, MILIK sent an encrypted message to CC-2, "What's up?"  CC-2 replied, "Good morning haven't heard from him."  MILIK asked, "Anything happening soon, we thought he said something by the end of November."

78. On or about December 16, 2022, CC-6 texted MILIK in Arabic, "Lessa." MILIK responded, "He said near the end of the year." CC-6 responded with a thumbs up and a prayer emoji.

79. On or about December 19, 2022, MILIK sent an encrypted message to CC-2, "Something still happening before the end of the year? Only a few days of trading left with the holidays." CC-2 responded, "He would let me know." MILIK said, "Ok."

80. On or about December 26, 2022, CC-6 texted MILIK in Arabic, "Lesa ya Nawnaw." MILIK responded, "Yup, we are waiting."

81. On or about December 27, 2022, MILIK sent an encrypted message to CC-2, "Hope you had a good Christmas! I told my guy that we were going to get something by the end of the year after we spoke at [ ]'s party. Only 4 days left in the year. Is that still happening?" CC-2 said, "Ok I will check." MILIK said, "Thank you . . .And sorry to keep bothering you."

82. On or about January 3, 2023, MILIK sent an encrypted message to CC-2, ". . . Is it safe to say this guy forgot about us? It's been 3 months."

83. On or about January 23, 2023, MILIK sent an encrypted message to CC-2, "We got one in august and one in September, and nothing in October, November, December, or January. Is it over? It's been 4 months with nothing?"

84. On or about November 6, 2023, RUDELA texted MILIK, "Have a safe flight! Also, are we good for everything with [CC-2] . . . just in case." MILIK replied, "no chance for a while he said." RUDELA asked, "Long while?" MILIK answered, "He said deal is not near to closing."

85.     On or about November 13, 2023, MILIK texted CC-2, "It's been 4 months since I told the guy to get ready in August.  He wants to know if we have any idea when something might happen or if we can at least ask and check."

Overview of the Money Laundering Conspiracy

86.     Beginning no later than in or about July 2022 and continuing through at least in or about November 2023, L. NOURAFCHAN, MILIK, RUDELA, MAKARY, VINSKI, CC-1, and CC-2 conspired with each other, and with others known and unknown to the Grand Jury, to engage in financial transactions, knowing that the property involved in the transactions represented the proceeds of securities fraud, and knowing that the transactions were designed to conceal and disguise the nature, location, source, ownership, and control of the proceeds of securities fraud.

Objects and Purposes of the Money Laundering Conspiracy

87.     The object of the conspiracy was to commit money laundering.  The principal purposes of the conspiracy were to conceal and disguise the nature, location, source, ownership, and control of the securities fraud proceeds, and to conceal the conspirators' actions from others, including regulators and law enforcement.

Manner and Means of the Money Laundering Conspiracy

88.     Among the manner and means by which L. NOURAFCHAN, MILIK, RUDELA, MAKARY, VINSKI, CC-1, CC-2, and others known and unknown to the Grand Jury carried out the conspiracy were the following:

a.     Obtaining MNPI about forthcoming M&A transactions and other confidential corporate matters from Law Firm A, including by viewing confidential documents on Law Firm A's document management systems, including documents that CC-1

accessed that were stored on a Law Firm A server located in the District of Massachusetts;

b.  Misappropriating and sharing that MNPI, obtained in violation of the duties of loyalty, trust, and confidence that CC-1 owed to Law Firm A and its clients, as well as in violation of insider trading and confidentiality policies that CC-1 was bound by;

c.  Recruiting co-conspirators, including L. NOURAFCHAN and CC-2, who shared MNPI about the merger-and-acquisition activity of publicly traded companies, in violation of the duties of trust and confidence owed to the sources of the information, including CC-1 and his employer, Law Firm A;

d.  Recruiting co-conspirators who agreed to trade in the securities of public companies while in possession of MNPI in exchange for an agreement to share in and kick back a portion of the profits generated by their insider trading and other benefits;

e.  Trading in the securities of those companies while in possession of MNPI about them and knowing that the MNPI was obtained in breach of a duty that the sources of the information owed, including trades executed over a securities exchange located in Boston, Massachusetts, and including by trading in brokerage accounts in their own names, in the names of family members and associates, and the names of corporate entities they controlled;

f.  Transferring proceeds of the illicit trading to co-conspirators, directly and indirectly, in cash and other transactions designed to conceal and disguise the nature, location, source, ownership, and control of the insider trading proceeds;

g.      Lying to and misleading banks and brokerage firms about the sources of information and reasons for securities trading, cash withdrawals, wire transfers, and other payments; and

h.      Taking steps to conceal the insider trading scheme from regulators and law enforcement, including by: communicating about the MNPI in person and via encrypted messaging applications; instructing co-conspirators during in-person meetings to put away electronic devices; enlisting other individuals to trade on behalf of co-conspirators to reduce direct connections between tippers and traders; using coded language and foreign languages, including coffee-related code words to refer to trading and MNPI; transferring proceeds in cash; deleting phone communications; creating false explanations and sham research to substantiate trading decisions; and lying to and misleading law enforcement, securities regulators, and brokerage firms.

<u>Overt Acts in Furtherance of the Money Laundering Conspiracy</u>

89.      Beginning no later than in or about July 2022 and continuing through at least in or about November 2023, L. NOURAFCHAN, MILIK, RUDELA, MAKARY, VINSKI, CC-1, CC-2, and others known and unknown to the Grand Jury, committed and caused to be committed the following overt acts, among others, including all of the overt acts alleged in paragraphs 27 through 85 above, in furtherance of the money laundering conspiracy.

90.      In or about October 2022, MILIK gave a cash payment to CC-2. CC-2 then provided that cash payment to L. NOURAFCHAN for the benefit of the sources of the MNPI, including CC-1.

91.     On or about October 21, 2022, MILIK transmitted an encrypted audio message to CC-2 in Egyptian Arabic stating, as translated into English, "By the way, I talked to the man, and he also agreed to make this one at 50, but if it comes out good, and we did well, the next one will be 100.  Anyways, in case you wanted to convey that to him."

COUNT ONE
Securities Fraud Conspiracy
(18 U.S.C. § 1349)

The Grand Jury charges:

92.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

93.     From in or about at least July 2022 through in or about at least November 2023, in the District of Massachusetts and elsewhere, the defendants,

(1)   LORENZO NOURAFCHAN,

(2)   NOWEL MILIK,

(3)   NICHOLAS RUDELA,

(4)   DAVID MAKARY, and

(5)   STEJPAN VINSKI,

conspired with one another, and with others known and unknown to the Grand Jury, to commit securities fraud, that is, to knowingly execute and attempt to execute a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including iRobot Corporation and KnowBe4, Inc.; and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including iRobot Corporation and KnowBe4, Inc., in that L. NOURAFCHAN, MILIK, RUDELA, MAKARY, and VINSKI traded in the securities of those companies while in possession of material non-public information and provided material non-public information to

other co-conspirators so that they could trade in the securities of those companies, in violation of Title 18, United States Code, Section 1348.

All in violation of Title 18, United States Code, Section 1349.

COUNT TWO
Securities Fraud Conspiracy
(18 U.S.C. § 371)

The Grand Jury charges:

94.     The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

95.     From in or about at least July 2022 through in or about at least November 2023, in the District of Massachusetts and elsewhere, the defendants,

(1)   LORENZO NOURAFCHAN,

(2)   NOWEL MILIK,

(3)   NICHOLAS RUDELA,

(4)   DAVID MAKARY, and

(5)   STJEPAN VINSKI,

conspired with one another, and with others known and unknown to the Grand Jury, to commit an offense against the United States, to wit, securities fraud, in violation of Title 15, United States Code, Sections 78j(b) and 78ff, and Title 17, Code of Federal Regulations, Section 240.10b-5, that is, knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly to use and employ manipulative and deceptive devices and contrivances in connection with the purchase or sale of securities in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and to (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate

as a fraud and deceit in connection with the purchase and sale of securities, including iRobot Corporation and KnowBe4, Inc.

All in violation of Title 18, United States Code, Section 371.

## COUNT THREE
### Securities Fraud; Aiding and Abetting
#### (18 U.S.C. §§ 1348 and 2)

The Grand Jury charges:

96.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

97.    On various dates between on or about July 1, 2022, and on or about November 30, 2023, in the District of Massachusetts and elsewhere, the defendants,

(1)    LORENZO NOURAFCHAN,

(2)    NOWEL MILIK,

(3)    NICHOLAS RUDELA,

(4)    DAVID MAKARY, and

(5)    STJEPAN VINSKI,

knowingly executed, and attempted to execute, a scheme and artifice (a) to defraud persons in connection with securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including iRobot Corporation and KnowBe4, Inc; and (b) to obtain, by means of false and fraudulent pretenses, representations and promises, money and property in connection with the purchase and sale of securities of issuers with a class of securities that was registered under Section 12 of the Securities Exchange Act of 1934, including iRobot Corporation and KnowBe4, Inc., in that L. NOURAFCHAN, MILIK, RUDELA, MAKARY, and VINSKI traded in the securities of those companies while in possession of material non-public information and provided material non-public information to other co-conspirators so that they could trade in the securities of those companies.

All in violation of Title 18, United States Code, Section 1348.

## COUNT FOUR
### Securities Fraud; Aiding and Abetting
(15 U.S.C. § 78j(b) and 78ff(a); 17 C.F.R. § 240.10b-5; 18 U.S.C. § 2)

The Grand Jury charges:

98.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

99.    On various dates between on or about July 1, 2022, and on or about November 30, 2023, in the District of Massachusetts and elsewhere, the defendants,

(1)    LORENZO NOURAFCHAN,

(2)    NOWEL MILIK,

(3)    NICHOLAS RUDELA,

(4)    DAVID MAKARY, and

(5)    STJEPAN VINSKI,

did knowingly and willfully, by the use of means and instrumentalities of interstate commerce, the mails, and the facilities of a national securities exchange, directly and indirectly use and employ manipulative and deceptive devices and contrivances in connection with the purchase or sale of securities in contravention of Rule 10b-5 of the Rules and Regulations promulgated by the United States Securities and Exchange Commission, and did (a) employ a device, scheme, and artifice to defraud; (b) make untrue statements of material facts and omit to state material facts necessary in order to make the statements made, in light of circumstances under which they were made, not misleading; and (c) engage in acts, practices, and courses of business which would and did operate as a fraud and deceit in connection with the purchase and sale of securities, including iRobot Corporation and KnowBe4, Inc.

All in violation of Title 15, United States Code, Sections 78j(b) and 78ff(a), Title 17, Code

25

of Federal Regulations, Section 240.10b-5, Title 18, United States Code, Section 2.

<u>COUNT FIVE</u>
Money Laundering Conspiracy
(18 U.S.C. § 1956(h))

The Grand Jury charges:

100.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

101.    From in or about at least July 2022 through in or about at least November 2023, in the District of Massachusetts and elsewhere, the defendants,

(1)    LORENZO NOURAFCHAN,

(2)    NOWEL MILIK,

(3)    NICHOLAS RUDELA,

(4)    DAVID MAKARY, and

(5)    STJEPAN VINSKI,

conspired with one another, and with others known and unknown to the Grand Jury, to conduct and attempt to conduct financial transactions, knowing that the property involved in such transactions represented the proceeds of some form of unlawful activity, and which in fact involved the proceeds of specified unlawful activity, that is, securities fraud, in violation of Title 18, United States Code, Section 1348, Title 15, United States Code, Sections 78j(b) and 78ff(a), and Title 17, Code of Federal Regulations, Section 240.10b-5, as charged in Counts Three and Four, and knowing that the transactions were designed, in whole and in part, to conceal and disguise the nature, location, source, ownership, and control of the proceeds of specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(B)(i).

All in violation of Title 18, United States Code, Section 1956(h).

<u>COUNT SIX</u>
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury charges:

102.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

103.    On or about June 18, 2025, in the District of Massachusetts and elsewhere, the defendant,

(2)    NOWEL MILIK,

in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically, an investigation by the Federal Bureau of Investigation concerning NOWEL MILIK's securities fraud and money laundering, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, to wit: that CC-2 did not tell NOWEL MILIK that the company iRobot Corporation was going to be acquired; that NOWEL MILIK did not pay CC-2 for the iRobot stock information; that NOWEL MILIK did not trade iRobot Corporation securities while in possession of MNPI that the company was going to be acquired; and that NOWEL MILIK did not trade KnowBe4, Inc. securities while in possession of MNPI that the company was going to be acquired.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT SEVEN
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury charges:

104.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

105.    On or about June 18, 2025, in the District of Massachusetts and elsewhere, the defendant,

(3)    NICHOLAS RUDELA,

in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically, an investigation by the Federal Bureau of Investigation concerning NICHOLAS RUDELA's securities fraud and money laundering, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, to wit: that NICHOLAS RUDELA did not trade securities in iRobot Corporation knowing that the company was going to be acquired; and that NICHOLAS RUDELA did not trade securities in KnowBe4, Inc. knowing that the company was going to be acquired.

All in violation of Title 18, United States Code, Section 1001(a)(2).

## COUNT EIGHT
False Statements
(18 U.S.C. § 1001(a)(2))

The Grand Jury charges:

106.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

107.    On or about July 31, 2025, in the District of Massachusetts and elsewhere, the defendant,

(5)    STJEPAN VINSKI,

in a matter within the jurisdiction of the executive branch of the Government of the United States, specifically, an investigation by the Federal Bureau of Investigation concerning STJEPAN VINSKI's securities fraud and money laundering, knowingly and willfully made materially false, fictitious, and fraudulent statements and representations, to wit: that STJEPAN VINSKI did not trade any stock knowing that the company was going to be acquired; that STJEPAN VINSKI did not trade any stock based on information that he received from NICHOLAS RUDELA; that NICHOLAS RUDELA did not provide MNPI about stocks to STJEPAN VINSKI, including that any company was going to be acquired; and that STJEPAN VINSKI did not pay RUDELA for stock information.

All in violation of Title 18, United States Code, Section 1001(a)(2).

30

## COUNT NINE
### Obstruction of Justice
### (18 U.S.C. § 1512(b)(1))

The Grand Jury charges:

108.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

109.    On or about October 3, 2025, in the District of Massachusetts and elsewhere, the defendant,

### (2)    NOWEL MILIK,

did knowingly, intentionally, and corruptly persuade another person, and attempted to do so, and engaged in misleading conduct toward another person, with intent to influence, delay, and prevent the testimony of any person in an official proceeding relating to the commission and possible commission of a Federal offense, that is, the insider trading scheme and securities fraud and money laundering conspiracies described in paragraphs 1 through 91 of this Indictment, to wit, NOWEL MILIK did corruptly persuade, and attempted to corruptly persuade, CC-7, who was subpoenaed to testify before a Grand Jury of the United States in the District of Massachusetts in a federal investigation, by instructing CC-7 to provide false information about the insider trading scheme and to provide false information about NOWEL MILIK and CC-7's interactions in or about October 2025.

All in violation of Title 18, United States Code, Section 1512(b)(1).

COUNT TEN
Obstruction of Justice
(18 U.S.C. §§ 1512(b)(3))

The Grand Jury charges:

110.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

111.    Beginning on or about July 31, 2025, in the District of Massachusetts and elsewhere, the defendant,

(5)    STJEPAN VINSKI,

did knowingly, intentionally, and corruptly persuade another person, and attempted to do so, with intent to hinder, delay, and prevent the communication to a law enforcement officer of the United States of information relating to the commission and possible commission of a Federal offense, that is, the insider trading scheme and securities fraud and money laundering conspiracies described in paragraphs 1 through 91 of this Indictment, to wit: STJEPAN VINSKI instructed CC-11 to not answer federal law enforcement's questions about the insider trading scheme.

All in violation of Title 18, United States Code, Sections 1512(b)(3).

## COUNT ELEVEN
False Declaration Before a Grand Jury
(18 U.S.C. § 1623(a))

112.    The Grand Jury re-alleges and incorporates by reference paragraphs 1 through 91 of this Indictment.

113.    On or about October 28, 2025, in the District of Massachusetts and elsewhere, the defendant,

(4)    DAVID MAKARY,

while under oath and testifying in a proceeding before a Grand Jury of the United States in the District of Massachusetts, did knowingly make false material declarations, to wit:

Q: But you remember he [MILIK] definitely did not tell you the company was going to get acquired?

*A: Correct.*

The aforesaid underscored testimony of DAVID MAKARY, as he then and there well knew and believed, was false, in that in or about October 2022, DAVID MAKARY executed securities trades in KnowBe4, Inc. while in possession of MNPI that MILIK had provided to him that KnowBe4, Inc. was going to be acquired.

All in violation of Title 18, United States Code, Section 1623(a).

FORFEITURE ALLEGATION
(18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c))

114.    Upon conviction of one or more of the offenses charged in Counts One, Two, Three, and Four, the defendants,

(1) LORENZO NOURAFCHAN,

(2) NOWEL MILIK,

(3) NICHOLAS RUDELA,

(4) DAVID MAKARY, and

(5) STEJPAN VINSKI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

115.    If any of the property described in paragraph 114, above, as being forfeitable pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), as a result of any act or omission of the defendants --

    a.  cannot be located upon the exercise of due diligence;

    b.  has been transferred or sold to, or deposited with, a third party;

    c.  has been placed beyond the jurisdiction of the Court;

    d.  has been substantially diminished in value; or

    e.  has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 28, United States Code, Section 2461(c), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 114 above.

All pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

## MONEY LAUNDERING FORFEITURE ALLEGATION
### (18 U.S.C. § 982(a)(1))

116.    Upon conviction of the offense charged in Count Five, the defendants,

(1) LORENZO NOURAFCHAN,

(2) NOWEL MILIK,

(3) NICHOLAS RUDELA,

(4) DAVID MAKARY, and

(5) STEJPAN VINSKI,

shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such offenses, and any property traceable to such property.

117.    If any of the property described in paragraph 116, above, as being forfeitable pursuant to Title 18, United States Code, Section 982(a)(1), as a result of any act or omission of the defendants --

    a.   cannot be located upon the exercise of due diligence;

    b.   has been transferred or sold to, or deposited with, a third party;

    c.   has been placed beyond the jurisdiction of the Court;

    d.   has been substantially diminished in value; or

    e.   has been commingled with other property which cannot be divided without difficulty;

it is the intention of the United States, pursuant to Title 18, United States Code, Section 982(b), incorporating Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the property described in paragraph 116 above.

All pursuant to Title 18, United States Code, Section 982(a)(1).

A TRUE BILL

███████████████

FOREPERSON

_Kaitlin R. O'Donnell_
KAITLIN R. O'DONNELL
IAN J. STEARNS
ASSISTANT UNITED STATES ATTORNEYS


District of Massachusetts: _April 28_ , 2026
Returned into the District Court by the Grand Jurors and filed.


/s/Thomas F. Quinn 4/28/2026 @ 3:45pm

DEPUTY CLERK